UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY DESKOVIC<br><br>Plaintiff,<br><br>-against-<br><br>CITY OF PEEKSKILL, PUTNAM COUNTY, WESTCHESTER COUNTY, DAVID LEVINE, THOMAS MCINTYRE, WALTER BROVARSKI, EUGENE TUMOLO, JOHN AND JANE DOE SUPERVISORS, DANIEL STEPHENS, LOUIS ROH, MILLARD HYLAND, PETER INSERO, and LEGAL AID SOCIETY OF WESTCHESTER COUNTY<br><br>Defendants. | No. 7:07-cv-8150 (KMK) (GAY)<br><br>**ECF Case** |
| LINDA MCGARR<br><br>Plaintiff,<br><br>-against-<br><br>CITY OF PEEKSKILL, PUTNAM COUNTY, WESTCHESTER COUNTY, DAVID LEVINE, THOMAS MCINTYRE, WALTER BROVARSKI, EUGENE TUMOLO, JOHN AND JANE DOE SUPERVISORS, DANIEL STEPHENS, LOUIS ROH, MILLARD HYLAND<br><br>Defendants. | No. 7:07-cv-09488 (KMK) (GAY)<br><br>**ECF Case** |

**REPLY OF DEFENDANT DANIEL STEPHENS AND PUTNAM COUNTY
IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT...............................................................................................................................1

POINT I
THERE IS NO EVIDENCE THAT STEPHENS COERCED A FALSE CONFESSION .............1

POINT II
PLAINTIFF FAILS TO PROVIDE ANY EVIDENCE STEPHENS ENGAGED IN
A CONSPIRACY. ........................................................................................................................4

POINT III
STEPHENS DID NOT HAVE A DUTY TO INTERCEDE.........................................................5

POINT IV
STEPHENS CANNOT BE LIABLE FOR MALICIOUS PROSECUTION. .................................6

POINT V
PLAINTIFF'S CLAIM THAT STEPHENS FABRICATED EVIDENCE IS NOT
SUPPORTED BY FACTS............................................................................................................7

POINT VI
PLAINTIFF LINDA MCGARR'S CLAIM AGAINST STEPHENS IS UNSUPPORTED
BY FACT.....................................................................................................................................8

CONCLUSION............................................................................................................................9

1844828-1

## **TABLE OF AUTHORITIES**

### **Cases**

Anthony v. City of New York,
    339 F.3d 129, 142-143 (2d Cir. 2003) ................... 8

Green v. Scully,
    850 F.2d 894, 901-902 (2d Cir. 1988................... 1

In re Dana Corp.,
    574 F.3d 129 (2d. Cir. 2003) .......................... 6

McCray v. City of New York,
    *2007 WL 4352748 at 27 (S.D.N.Y. Dec. 11, 2007)* ........ 8

Miner v. New York State Dep't of Health,
    *2004 WL 1152491 at 5 (S.D.N.Y. May 24, 2004)* .......... 8

Pizzuto v. County of Nassau,
    240 F. Supp. 2d 203. (E.D.N.Y. 2002) .................. 9

Rounseville v. Zahl,
    *13 F.3d 625 (2d Cir. 1994)* ............................ 4

Schneckloth v. Bustamonte,
    *412 U.S. 218, (1973)* .................................. 3

U.S. v. Anderson,
    *929 F.2d 96, 99 (2d Cir. 1991)* ........................ 1

Weaver v. Brenner,
    *40 F.3d 527 (2d Cir. 1994)* ............................ 2

1844806-1

## PRELIMINARY STATEMENT

Defendants Daniel Stephens and Putnam County respectfully submit this reply memorandum of law in further support of their motion for summary judgment dismissing all claims against them. As set forth below, and in the initial motion for summary judgment, this court should dismiss all claims against Daniel Stephens and Putnam County.

## ARGUMENT

## POINT I

## THERE IS NO EVIDENCE THAT STEPHENS COERCED A FALSE CONFESSION

Whether a confession is coerced depends on: (1) the characteristics of the accused, (2) the conditions of interrogation, and (3) the conduct of law enforcement officials. Green v. Scully, 850 F.2d 894, 901-902 (2d Cir. 1988). "A confession is not voluntary when obtained under circumstances that overbear the defendant's will at the time it is given." U.S. v. Anderson, 929 F.2d 96, 99 (2d Cir. 1991).

Plaintiff alleges that Stephens conducted an aggressive and hostile interrogation and falsely told Deskovic he failed the polygraph exam. Plaintiff has not established any facts that support this theory. The only testimony regarding the results of Deskovic's polygraph exam is Stephens' testimony. Stephens consistently reported during the suppression hearing, the criminal trial and deposition in this lawsuit, that Deskovic indicated deception on the polygraph exam. Plaintiff has not provided any evidence to contradict Stephens' opinion and thus the proposition that Stephens "falsely told Jeff he failed the polygraph exam" is unsupported by fact.[1] Stephens testified that Deskovic could have indicated deception even if he had nothing to do with the

---

[1] Plaintiff relies on the expert report of Charles Honts in an attempt to support his theory that the polygraph exam administered by Stephens was used only to elicit a confession. However, Honts' admittedly did not examine the results of the polygraph exam. Thus this report must be disregarded.

crime. This could happen if Deskovic watched the crime occur and experienced remorse, or if Deskovic believed he had something to do with the crime. (DS: 74:23-76:2, 79:5-79:22).

Further in attempting to establish evidence of a coercive atmosphere, plaintiff relies on facts that have nothing to do with Stephens. Plaintiff claims he was 25 miles from home, had no parent, counsel, or friend to advise him, was interrogated for 10 or 11 hours and had nothing to eat, while drinking several cups of coffee. Pl. Mem. 11-12. Plaintiff's only mention of Stephens in these allegedly coercive tactics is that Stephens invaded Deskovic's personal space, repeated the same questions and refused to accept Deskovic's denials of involvement in the crime. These actions do not rise to the level of a constitutional violation supporting a claim of a coerced confession. Stephens was trained to repeat the same questions, and in fact, repeated one portion of the polygraph exam three times. (DS: 181:4-187:12). This was done in order to ensure the accuracy of the exam and to determine whether Deskovic was being deceptive. Surely, plaintiff will not contend that merely repeating the polygraph exam to ensure accuracy rises to the level of coercion.

Moreover, in support of his claim of a coerced confession, plaintiff relies on a number of cases, which are all easily distinguishable. In Weaver v. Brenner, 40 F.3d 527 (2d Cir. 1994), a police officer told the accused if he confessed the accused's conduct would be "kept out of the newspapers." Weaver denied accusations several times, and was told he committed the crime, and the details of the crime. When Weaver attempted to provide the two interrogators with the names of other people who would support him, he was ignored. Id. at 536-537.

In People v. Leonard, 59 A.D.2d 1 (2d Dep't. 1977), a police officer told Leonard the exact circumstances of the crime, and Leonard agreed with same. Leonard had slept for only three hours the night before the exam, and had requested the polygraph be terminated.

2

Defendant was also under extreme emotional distress prior to taking the polygraph exam. It was also clear he was not free to leave. Leonard was also physically threatened by the examiner.

Finally, Plaintiff cites <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218 (1973), for the proposition that "repeated and prolonged nature of questioning" is a factor supporting coercion. However that case does not address a voluntary polygraph exam which the accused agreed to undergo on multiple occasions. It also does not address a suspect who signed multiple waivers before taking a polygraph exam.

In the case at bar, Stephens never told Deskovic any details about the crime. He just told Deskovic that the polygraph indicated Deskovic's deception. Thus, plaintiff's allegations that Stephens used the polygraph as an instrument of coercion, is baseless.

Additionally, plaintiff consistently misrepresents the facts that occurred once Stephens left the room. Plaintiff alleges that Stephens was listening to Detective McIntyre at the time of Deskovic's confession. There is no testimony that supports this theory. Stephens testified at the suppression hearing and at the trial that he *was able* to hear what was going on in the room with Deskovic and McIntyre. He never testified that he *did hear* what was going on. (DS Trial: 1048:2-5, DS: 215). Indeed at his deposition he testified that he did not hear the words spoken between McIntyre and Deskovic. (DS 214:16-214:22) This testimony is not contradicted, and negates plaintiff's claim that Stephens was listening when McIntyre falsely promised Deskovic leniency.

Finally, plaintiff attributes alleged police misconduct of the Peekskill Police to Stephens. Plaintiff claims he was driven far from his home, threatened if he did not confess to the crime and promised absolute immunity if he confessed. It is undisputed that none of these actions are attributable to Stephens. Stephens' only interaction with Deskovic was to explain how the

polygraph exam worked, give Deskovic *Miranda* warnings, administer the polygraph examination and inform Deskovic that his answers indicated deception. This conduct does not rise to the level of coercion, and cannot be deemed a constitutional violation.

## POINT II

### PLAINTIFF FAILS TO PROVIDE ANY EVIDENCE STEPHENS ENGAGED IN A CONSPIRACY

Plaintiff argues that intent to engage in a conspiracy may be established through circumstantial evidence. Rounseville v. Zahl, 13 F.3d 625 (2d Cir. 1994). However, plaintiff fails to provide any evidence that supports a conspiracy existed. Plaintiff first argues that an experienced NYPD polygrapher used for other witnesses was "passed over" to have Stephens examine Deskovic. Plaintiff cites to his additional statement of fact section including at ¶15 that Millie Markman of the NYPD was used to polygraph two other witnesses, and "there is no indication Markman was unavailable to polygraph Jeff." P. 56.1 Statement ¶15. Plaintiff fails to mention that there was also no indication that Ms. Markman was available to polygraph Deskovic, nor is this relevant to a determination of this issue.

Plaintiff's suggestion that Tumolo "sought out Stephens specifically to help get a confession after his officers failed to do that on their own", is likewise unsupported by fact. Pl. Mem. 17. The document plaintiff cites *does not* mention that Tumolo sought out Stephens specifically to get a confession. Rather the document only indicates Stephens scheduled a polygraph exam at the Peekskill Police Department's request, and, after administering the examination, confirmed Deskovic's deception. (Plaintiff's Exhibit 53 p.2) Plaintiff's statement that Tumolo sought out Stephens specifically to secure a confession is a blatant misrepresentation of the facts.

4

## POINT III

### STEPHENS DID NOT HAVE A DUTY TO INTERCEDE

Plaintiff argues that Stephens was aware of the threats McIntyre made to Deskovic on January 25, 1990.  Plaintiff further argues that Stephens' deposition testimony denying that he ever heard this confession is evidence of bad faith. Plaintiff again fails to acknowledge that Stephens' earlier testimony at the trial and suppression hearing did not indicate Stephens heard Deskovic's confession.

Plaintiff alleges Stephens is responsible for failing to intercede because he failed to inform the prosecution that Deskovic's confession was coerced.   Plaintiff cannot prove that Stephens heard Deskovic's confession, or that this confession was coerced.   Furthermore, plaintiff's attempt to couch this argument as a failure to intercede violation is misplaced.  There is no applicable case law that supports this type of failure to intercede cause of action.

Plaintiff further alleges Stephens "misrepresented the true circumstances of the coercive interrogation". Pl. Mem. 19. This subject, addressed in this brief as well as the initial motion for summary judgment, is again mischaracterized by plaintiff.  Stephens did not hear the confession Deskovic made, and thus cannot be held liable for failure to intercede.

Finally, plaintiff cites no case law to support a failure to intercede for time Deskovic spent in jail.  The only failure to intercede case law plaintiff cites is law relating to claims of excessive force.[2]  Stephens can only be held liable for the actual threat made by McIntyre on January 25, 1990, if Stephens heard this.   Since there is no evidence Stephens heard the confession, plaintiff's claim must fail.

_____

[2] Plaintiff acknowledges this fact in footnote 27 of his brief. Pl. Mem. 19-20. O'neill v. Krzeminski, 839 F.2d 9 (2d Cir. 1988) and Anderson v. Branen, 17 F.3d 552 (2d Cir. 1994) are both cases where a failure to intercede was based on excessive force actions readily observable by other police officers.  There is no dispute that these are not the same circumstances.

## POINT IV

### STEPHENS CANNOT BE LIABLE FOR MALICIOUS PROSECUTION

Plaintiff first argues that Stephens can be held liable for initiating and continuing the prosecution. Pl. Mem. 20. Plaintiff's argument that Stephens acted in concert with McIntyre, who signed the felony complaint, is not supported by any facts. Plaintiff cites In re Dana Corp., 574 F.3d 129 (2d. Cir. 2003) for the proposition of concerted action liability. The court in In re Dana Corp. held:

> Under New York law, which governs this cause of action for the misappropriation of its trade secrets, a plaintiff may, on a theory of concerted action, recover damages from a defendant that was one of a group of entities if at least one of those entities committed a tort in pursuance of a common plan or design, and the defendant knew the wrongful nature of the primary actor's conduct and intended to assist in or profit from the commission of the tort. Such liability may also be imposed on one who encourages the commission of a tort or who, knowing of a tort committed for its benefit, ratifies it. Id. at 153.

Plaintiff cites this case to support his theory that Stephens alleged assistance of McIntyre is sufficient to find Stephens liable for filing the complaint against Deskovic. This notion is clearly misplaced. Simply, there is no evidence that there was a conspiracy between Stephens and McIntyre, or any of the other Peekskill police officers. Any claim to the contrary is based upon pure speculation and conjecture.

Plaintiff alleges that there was no probable cause to arrest Deskovic because Deskovic was actually innocent of the crime and there was never any reliable evidence of his guilt, and Stephens knew this. Pl. Mem. 21. Although plaintiff alleges that Deskovic never failed a polygraph test, and that Stephens told plaintiff he failed the exam to coerce his confession, plaintiff does not cite any evidence to substantiate this claim. Plaintiff's statement that Deskovic only repeated facts the police fed to him

implicates the Peekskill Police, not Stephens.  There is no dispute that Stephens did not

provide Deskovic with non-public facts about the crime.

Finally, plaintiff's contention that Stephens' alleged "ill will and rough

treatment" of Deskovic during the polygraph exam are evidence of his actual malice

are unfounded.  Plaintiff fails to describe these conclusory terms, and produces no case

law that supports this legal theory.

**POINT V**

**PLAINTIFF'S CLAIM THAT STEPHENS FABRICATED EVIDENCE IS NOT
SUPPORTED BY FACTS**

Plaintiff argues Stephens fabricated the statement he attributed to Deskovic, "I don't

know if he ejaculated".  Plaintiff asserts this is "a classic dispute of fact", and that the evidence

here is enough to support a fabrication claim. Pl. Mem. 8.  In support of his claim, plaintiff first

argues that Stephens did not produce any notes to the prosecutor until March 15, 1990, seven

weeks after the polygraph examination.  However, once again, this claim is unsupported by fact.

Bolen testified that if he had read the "statement" in the indictment file, he would have

provided it to defense counsel.  Bolen recalls that he did not receive this statement until

sometime between March 15, 1990 and March 22, 1990.  However, even if this is true, there is

no testimony that contradicts the assertion that this statement was already in the indictment file.

There is also no testimony that Stephens provided supplemental reports to Bolen after the

polygraph exam.  Plaintiff is attempting to use Bolen's testimony that Bolen personally did not

have notice of Deskovic's statements to prove that Stephens failed to provide those statements.

However, there is no evidence to support this assertion.

Plaintiff further alleges that a reasonable jury could conclude Stephens created these

notes because Stephens "already participated in illegally coercing a false confession from

7

Deskovic." Pl. Mem. 9. This is another claim based purely on speculation and conjecture. Finally, plaintiff's assertion that Stephens had a motive to fabricate a statement to support the charge against Deskovic is equally unsupported by any evidence in the record.

## POINT VI

### PLAINTIFF LINDA MCGARR'S CLAIM AGAINST STEPHENS IS UNSUPPORTED BY FACT

Plaintiff Linda McGarr alleges Stephens violated her constitutional right to familial association. However there is no evidence to support this claim.

To support her claim plaintiff must show that Stephens coercively interfered with her "substantive right under the Due Process Clause to remain together" with her family "must demonstrate that the alleged interference was so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it." Anthony v. City of New York, 339 F.3d 129, 142-43 (2d Cir. 2003). Therefore, McGarr must show either: (1) the defendant's intent to disrupt familial association, or (2) the defendant's deliberate indifference to familial association rights. McCray v. City of New York, 2007 WL 4352748 at 27 (S.D.N.Y. Dec. 11, 2007) (dismissing claims for loss of familial association based on an alleged unlawful arrest, prosecution, and incarceration because there was no showing that defendants acted with intent to disrupt familial association, or that defendants acted with deliberate indifference to their familial association rights"); Miner v. New York State Dep't of Health, 2004 WL 1152491 at 5 (S.D.N.Y. May 24, 2004).

There is no evidence McGarr cites to support the notion that Stephens acted with an intent to disrupt her relationship with her son. The only mention Deskovic made of his mother, was to tell Stephens he lived with her, and that he had a "so-so" relationship with her.

There is simply nothing in this record to support a claim that Stephens acted with an intent to disrupt, or a deliberate indifference to, McGarr's relationship with her son. According to

Pizzuto v, County of Nassau, 240 F.Supp.2d 203. (E.D.N.Y. 2002) a claim is unsupported if there is no evidence that the defendants in this case took acts that purposely and directly affected Plaintiffs' relationship with person arrested. Id. at 213. Here there is no indication that Stephens purposely and directly attempted to affect Deskovic's relationship with his mother.

Plaintiff's argument that Stephens interfered with McGarr's right to raise her son misstates the applicable law. Since there is no factual basis for plaintiff to prove the allegations against Stephens, plaintiff's complaint must be dismissed.

## CONCLUSION

Based upon the forgoing, it is respectfully requested that the court grant Daniel Stephens and Putnam County's motion for summary judgment and dismiss plaintiff's complaint.

Dated: New York, New York
December 19, 2011

YOURS, etc.,
HARWOOD LLOYD, LLC

By: _____

Robert Delicate (RD-7363)
Stephen Wellinghorst (SW-2998)
*Attorneys for Defendant Daniel Stephens and
Putnam County*
350 Fifth Avenue, 59th Floor
Empire State Building
New York, New York 10118
(201) 359-3530

TO:

Nick Brustin
nick@nsbcivilrights.com
Chloe Cockburn
chloe@nsbcivilrights.com
Neufeld, Scheck and Brustin LLP
99 Hudson St.
New York, New York 10013

Vincent Gelardi
vg@vincentgelardi.com
Gelardi & Randazzo, LLP
800 Westchester Ave., Suite S-608
Rye Brook, NY 10573

James Mitchell
jmitchell@stillmanfriedman.com
Stillman Friedman and Shechtman, P.C. 425 Park Ave.
New York, NY 10022

Peter Meisels
Peter.meisels@wilsonelser.com
John Flannery
john.flanney@wilsonelser.com
Lalit Loomba
lalit.loomba@wilsonelser.com
Wilson Elser Moskowitz Edelman& Dicker, LLP
3 Gannett Drive
White Plains, NY 10604-3407

Diane Houk dhouk@ecbalaw.com
Emery Celli Brinckerhoff & Abady, LLP
75 Rockefeller Plaza, 20th Floor
New York, NY 10019


1843162-1