UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

____________________________________________X **No.: CV-07-8150 (KMK)(GAY)**

JEFFREY DESKOVIC,

Plaintiff,

vs.

CITY OF PEEKSKILL, ET AL.,

Defendants.

____________________________________________X

LINDA MCGARR, **No. 07-CV-9488 (KMK)(GAY)**

Plaintiff,

vs.

CITY OF PEEKSKILL, ET AL.,

Defendants.

____________________________________________X

CITY OF PEEKSKILL,

Third-Party Plaintiff,

vs.

WESTPORT INSURANCE COMPANY, ET AL.,

Third-Party Defendants.

____________________________________________X

**JOINT INSURERS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS COUNT III AGAINST THIRD PARTY DEFENDANT INSURERS WHO SUBSCRIBED/ISSUED POLICIES TO THE CITY OF PEEKSKILL EFFECTIVE FROM DECEMBER 31, 1991 to DECEMBER 31, 1999**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

ARGUMENT ........ 1

1. The City's Additional Bad Faith Allegations Were Not Authorized by the Court ........ 1

2. The City's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Must be Dismissed Because it Merely Repeats the Allegations that Comprise the City's Breach of Contract Claim ........ 2

3. The City's Argument that Count III is Not Duplicative is Without Merit ........ 3

4. The Cases Cited by the City in its Response Provide No Support for Preserving Count III ........ 4

5. The Joint Insurers are Entitled to Rely On Their Policy Language to Dispute the City's Breach of Good Faith Claim Under Count III ........ 6

6. The Joint Insurers' Policies Do Not Contain an Obligation to Defend or Settle Claims and Only Require Reimbursement for a Covered Claim or Loss After the City has Paid the Loss ........ 8

7. The City's Contention That it Would be "Unfair" for the Court to Require it to Satisfy the SIRs Under the Policies is Without Merit ........ 9

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**Cases** **Page**

*Bi-Economy Mkt., Inc. v. Harleysville Ins. Co.*,
10 N.Y.3d 187 (N.Y. 2008) .......... 4, 5

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) .......... 7

*Chernish v. Mass. Mut. Life Ins. Co.*, No. 08-cv-0957,
2009 WL 385418; 2009 U.S. Dist. LEXIS 9617
(N.D.N.Y. Feb. 10, 2009) .......... 5

*Corazzini v. Litton Loan Servicing LLP*, No. 09-cv-0199,
2010 WL 1132683; 2010 U.S. Dist. LEXIS 27398
(N.D.N.Y. Mar. 23, 2010) .......... 6

*Cross v. Toyota Motor Corp.*, No. 10-cv-1179,
2011 WL 2222350, 2011 U.S. Dist. LEXIS 61380
(N.D.N.Y. June 7, 2011) .......... 2, 6

*Goldmark v. Catlin Syndicates, Ltd.*, No. 09-cv-3876,
2011 WL 743568, 2011 U.S. Dist. LEXIS 18197
(E.D.N.Y. Feb. 24, 2011) .......... 2, 6

*Great-West Life Annuity Ins. Co. v. Knudson*,
534 U.S. 204 (2002) .......... 7

*Hawthorne Group, LLC v. RRE Ventures*,
776 N.Y.S.2d 273 (N.Y. App. Div. 2004) .......... 2

*Harriprashad v. Metro. Prop. & Cas. Ins. Co.*, No. 09-cv-3105,
2011 WL 6337699; 2011 U.S. Dist. LEXIS 145573
(E.D.N.Y. Nov. 17, 2011) .......... 6

*Haym Salomon Home for the Aged, LLC v. HSB Group, Inc.*, No. 06-cv-3266,
2010 WL 301991; 2010 U.S. Dist. LEXIS 4255
(E.D.N.Y. Jan. 20, 2010) .......... 5

*Fed. Ins. Co. v. Kozlowski*,
792 N.Y.S.2d 397 (N.Y. App. Div. 2005) .......... 9

*National Union Fire Ins. Co. of Pittsburgh v. Ambassador Group, Inc.*,
556 N.Y.S.2d 549 (N.Y. App. Div. 1990) .......... 9

*O.K. Petroleum Distribution Corp. v. Travelers Indem. Co.*, No. 09-cv-10273, 2010 WL 2813804, 2010 U.S. Dist. LEXIS 71465 (S.D.N.Y. July 15, 2010) .......... 3

*Pacific Employers Ins. Co. v. Domino's Pizza Inc.*, 144 F.3d 1270 (9th Cir. 1998) .......... 9

*Panasia Estates, Inc. v. Hudson Ins. Co.*, 10 N.Y.3d 200 (N.Y. 2008) .......... 4, 5

*Quick Response Commercial Div., LLC v. Travelers Prop. Cas. Co.*, No. 09-cv-651, 2009 WL 3334600; 2009 U.S. Dist. LEXIS 95438 (N.D.N.Y. Oct. 14, 2009) .......... 5

*Royal Indem. Co. v. Wyckoff Heights Hosp.*, 953 F. Supp. 460 (E.D.N.Y. 1996) .......... 9

*Save Mart Supermarkets v. Underwriters at Lloyd's, London*, 842 F. Supp. 597 (N.D. Cal. 1994) .......... 9

*Schlather, Stumbar, Parks & Salk, LLP v. One Beacon Ins. Co.*, No. 10-cv-0167, 2011 WL 222235; 2011 U.S. Dist. LEXIS 5779 (N.D.N.Y. Jan. 21, 2011) .......... 6

*Strom v. Goldman Sachs & Co.*, 202 F.3d 138 (2d Cir. 1999) .......... 7

*Woodhams v. Allstate Fire & Cas. Co.*, 748 F. Supp. 2d 211 (S.D.N.Y. 2010) .......... 2

**Statutes**

FED. R. CIV. P. 15(a)(2) (West 2011) .......... 2

FED. R. CIV. P. 12(b)(6) (West 2011) .......... 7

## INTRODUCTION

The Joint Insurers'[1] Motion to Dismiss Count III in Peekskill's First Amended Third Party Complaints (herein the "Motion") seeks only to resolve two purely legal issues, namely that: (1) under New York law, the City cannot assert a claim for Breach of the Implied Covenant of Good Faith and Fair Dealing in addition to its Breach of Contract claim, as such a claim is duplicative; and (2) under New York law, the City cannot maintain a claim for bad faith failure to settle where the Joint Insurers' Policies do not provide for the control of the City's defense or settlement. The City, in its Memorandum of Law in Opposition to the Joint Insurers' Motion (and also in opposition to the motions of other defendants) (the "Response"), responds with unsupported "facts" and improper legal arguments concerning the construction of insurance policies and the trigger of coverage. (Response, at 2–4.) These "facts" and arguments are irrelevant to the two purely legal issues identified above. Accordingly, the Joint Insurers confine their Reply herein to rebutting the City's mistaken positions on these issues, and reaffirm that the well-established and well-reasoned case law cited in their initial Motion supports the dismissal of Count III for Breach of the Implied Covenant of Good Faith and Faith Dealing in the City's First Amended Third Party Complaints.

## ARGUMENT

### 1. The City's Additional Bad Faith Allegations Were Not Authorized by the Court

While the City attempts to justify its addition of "bad faith" allegations because they relate to the Joint Insurers' conduct after the filing of the City's original Third Party Complaints, the City fails to explain how it "thought" it had obtained the Court's leave to add these

[1] Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies ("London Insurers"), Illinois Union Insurance Company ("Illinois Union"), United National Insurance Company ("United") and Travelers Indemnity Company ("Travelers"), as defined in their joint Motion.

allegations when it did not mention its intention to do so at the March 27, 2012 pre-motion conference. (*See* Response, at 6.) The City then falls back on case law concerning the standard for amending a complaint under Fed. R. Civ. Pro. 15(a)(2). The City again fails to recognize that such an amendment itself requires a motion or, at the very least, a pre-motion conference. As the City failed to advise the Court of its intention to make these amendments, they should be stricken from the First Amended Third Party Complaints along with its Count III.

**2. The City's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Must be Dismissed Because it Merely Repeats the Allegations that Comprise the City's Breach of Contract Claim**

New York law is well settled: no independent claim for breach of a contract's implied covenant of good faith and fair dealing (herein "breach of good faith") can be maintained when such claim is "based on the same facts" as a separate breach of contract claim. *Goldmark v. Catlin Syndicates, Ltd.*, No. 09-cv-3876, 2011 WL 743568, at *4 (E.D.N.Y. Feb. 24, 2011). On numerous occasions, New York courts have dismissed an insured's claim for breach of good faith where the claim is "intrinsically tied to the damages allegedly resulting from a breach of contract." *Hawthorne Group, LLC v. RRE Ventures*, 776 N.Y.S.2d 273, 276 (N.Y. App. Div. 2004); *Woodhams v. Allstate Fire & Cas. Co.*, 748 F. Supp. 2d 211, 223 (S.D.N.Y. 2010); *Cross v. Toyota Motor Corp.*, No. 10-cv-1179, 2011 WL 2222350, at *1 (N.D.N.Y. June 7, 2011). The City cites no authority to the contrary. Instead, it relies on inapposite precedents and ignores the Joint Insurers' operative policy language in an attempt to supplement its breach of contract claim with a breach of good faith claim that is not viable under New York law. As such, the City's cause of action for breach of good faith (Count III) is duplicative of the City's breach of contract claim (Count II). Count III must therefore be dismissed.

### 3. The City's Argument that Count III is Not Duplicative is Without Merit

The City asserts that Count III is not duplicative of its breach of contract claim "since the [First Amended Third-Party Complaints] allege[] more than just a denial of coverage by the Third-Party Defendants in breach of the Third-Party Defendants' Policies." (*See* Response, at 11.) The City is wrong.

A review of the allegations underlying Counts II and III reveals that both causes of action and the damages arising therefrom are predicated entirely and solely on the Joint Insurers' alleged breach of their purported obligations[2] under the Policies. (*Compare* DTPC at ¶¶ 220–21, *with id.* at ¶¶ 225–26.) Making the conclusory statement that the Joint Insurers' denial of coverage "was not only improper, but also unreasonable" does nothing to change this dispositive consideration. (*See* Response, at 11.) It surely does not make actionable a breach of good faith claim that is rooted solely in the City's breach of contract claim. The City cannot genuinely dispute that the allegations of Count III are not "intrinsically tied" to the allegations of Count II.

Oddly, the only case that the City cites in support of this argument is a case in which the Court held that all bad faith allegations made by insureds relating to the underlying denial of coverage were duplicative of insureds' breach of contract claim. *See O.K. Petroleum Distribution Corp. v. Travelers Indem. Co.*, No. 09-cv-10273, 2010 WL 2813804, at *3 (S.D.N.Y. July 15, 2010). Moreover, the *O.K. Petroleum* court ultimately *dismissed* the count alleging breach of good faith on the grounds that the standard for pleading bad faith had not been satisfied. *Id.* at *4. The City's reliance on this inapposite precedent does nothing to enhance its

---

2 Emphasis is warranted on this point because those duties that the Joint Insurers are alleged to have breached are nowhere to be found in their Policies. As discussed more fully in Section 6, *infra*, Joint Insurers issued indemnity-only Policies to the City that contain no obligation to defend or settle claims. Hence, the City's entire discussion on page 11 of its Response is a red herring that bears no relation to the actual language of the Joint Insurers' Policies.

argument. The takeaway from *O.K. Petroleum* is that a separate and distinct breach of good faith claim against an insurer must be founded on conduct *entirely independent* of the insurer's contractual duty to provide coverage, which means the allegations must contain all the necessary elements for tortious conduct. To allow the City's separate allegation of breach of good faith to stand would improperly suggest that the City has alleged sufficient facts to charge the Joint Insurers with actionable, egregious conduct beyond any breach of contract—when in fact that City has alleged nothing of the sort. Count III derives solely from the Joint Insurers' alleged denial of coverage and it should be dismissed.

**4. The Cases Cited by the City in its Response Provide No Support for Preserving Count III**

The City dedicates a significant portion of its Response citing a litany of New York cases that do nothing to advance its argument for preserving the duplicative Count III. Specifically, the City points to two New York Court of Appeals cases that purportedly support its argument that a claim for extra-contractual damages arising out of bad faith can be maintained simultaneously with a separate claim for contractual damages for breach of contract. Those cases permitted insureds to allege consequential damages for improper investigation or denial of a claim, when such damages were "foreseeable and probable" either before or at the time the insurance contract was issued. *See Bi-Economy Mkt., Inc. v. Harleysville Ins. Co.*, 10 N.Y.3d 187 (N.Y. 2008); *Panasia Estates, Inc. v. Hudson Ins. Co.*, 10 N.Y.3d 200 (N.Y. 2008). Neither case, however, is on point, and therefore neither governs the outcome of the Joint Insurers' Motion to Dismiss.

In *Bi-Economy* and *Panasia* (both decided the same day), the issue before the court was only whether plaintiffs could assert a claim for consequential *damages* beyond the policy limits in a *breach of contract* action when an insurer allegedly handled a claim in bad faith. *See Bi-*

*Economy*, 10 N.Y.3d at 190, 194–95; *Panasia*, 10 N.Y.3d at 202–03. Contrary to the City's untenable position, the New York Court of Appeals did not pronounce a new cause of action that never before existed against insurance carriers. *See Haym Salomon Home for the Aged, LLC v. HSB Group, Inc.*, No. 06-cv-3266, 2010 WL 301991, at *5 n.1 (E.D.N.Y. Jan. 20, 2010) (holding *Bi-Economy* inapplicable where insured failed to allege damages as a result of insurer's breach of good faith apart from those suffered as a result of the breach of contract). The facts of *Bi-Economy/Panasia* also bear no resemblance to the facts of the instant controversy. The defendants-insurers in those cases were first-party insurers who were under affirmative duties to adjust the insureds' losses. In the instant case, the Joint Insurers issued indemnity-only liability Policies to the City that do not impose such a duty. Therefore, the facts of *Bi-Economy/Panasia* are completely inapposite to this case.

Additionally, the City's reliance on *Chernish v. Mass. Mut. Life Ins. Co.*, No. 08-cv-0957, 2009 WL 385418 (N.D.N.Y. Feb. 10, 2009) and *Quick Response Commercial Div., LLC v. Travelers Prop. Cas. Co.*, No. 09-cv-00651, 2009 WL 3334600 (N.D.N.Y. Oct. 14, 2009) also offers no support for the City's contention that *Bi-Economy* and *Panasia* have changed the landscape in New York permitting a duplicative claim for breach of good faith. Importantly, the City fails to acknowledge in its Response that whatever tentative support these two cases may have once provided, they have since been rejected and overruled by a litany of subsequent New York state and federal district court decisions.[3]

A review of the most recent federal district court decisions confirms that *Bi-Economy/Panasia* changed nothing with respect to the issues before this Court. In particular,

[3] It should also be noted that *Chernish* and *Quick Response* were handed down shortly after *Bi-Economy/Panasia*, when New York federal district courts were still uncertain about the precise impact of these cases.

subsequent New York cases have universally reaffirmed the well-settled principle that allegations pertaining to the breach of good faith do not give rise to a cause of action separate from a breach of contract claim. *See, e.g.*, *Corazzini v. Litton Loan Servicing LLP*, No. 09-cv-0199, 2010 WL 1132683, at *7 (N.D.N.Y. Mar. 23, 2010) (dismissing plaintiff's breach of good faith claim which only repeated allegations consisting of defendants' non-compliance with contractual terms); *Schlather, Stumbar, Parks & Salk, LLP v. One Beacon Ins. Co.*, No. 10-cv-0167, 2011 WL 222235, at *4 (N.D.N.Y. Jan. 21, 2011) (dismissing breach of implied covenant claim as duplicative of breach of contract claim); *Harriprashad v. Metro. Prop. & Cas. Ins. Co.*, No. 09-cv-3105, 2011 WL 6337699, at *2 (E.D.N.Y. Nov. 17, 2011) ("Plaintiff, however, cannot assert a separate claim of 'bad faith' because New York does not recognize such a claim with respect to insurance contracts."); *Cross*, 2011 WL 2222350, at *1 (breach of good faith claim must be dismissed where it is "duplicative of the breach of contract claim"); *Goldmark*, 2011 WL 743568, at *4 (holding that New York law does not recognize an independent claim for breach of good faith "based on the same facts" as a breach of contract claim).

In sum, the legal decisions relied on by the City in its Response provide no solace. New York law has not changed, and the City cannot state a claim for breach of good faith when such claim is nothing more than a restatement of its claim for breach of contract.

**5. The Joint Insurers are Entitled to Rely On Their Policy Language to Dispute the City's Breach of Good Faith Claim Under Count III**

In their Motion to Dismiss, the Joint Insurers identified the unambiguous language in their Policies confirming that the defense and settlement of the underlying lawsuits is the sole responsibility of the City, not the Joint Insurers. (*See* Joint Insurers' MOL, at 13–14; Affidavit of D. Dolendi at ¶¶ 4–5.) In its Response, the City suggests that the Joint Insurers' reliance on their policy language is merely a "back door" attempt to have this Court rule on the "duty to

defend" and the "number of deductibles" issue and should be rejected. The City's argument is unfounded.

Here, the City forgot it left the "front door" wide-open when it included allegations in support of Count III based on the premise that the Joint Insurers failed to settle the underlying lawsuits. (DTPC at ¶224; MTPC at ¶225.) The City must have also forgotten that the Joint Insurers' Policies are cited to, referenced and relied on by the City in support of Count III of the First Amended Third Party Complaints. In completely contradictory fashion, the City on one hand asks the Court to find that the Joint Insurers acted in bad faith and breached their obligations under the policies by failing to settle the underlying lawsuits and, on the other hand, asks the Court to ignore those provisions in the Policies that confirm that the Joint Insurers had no such obligation. The City cannot have it both ways. The Joint Insurers' reliance on the language in their Policies is warranted.

Additionally, it is well settled that the Court is permitted to consider policy language for purposes of determining a 12(b)(6) Motion to Dismiss. This is particularly true where the insurance policies are incorporated into the pleadings and specifically relied on by the plaintiff to support its claims. *See Strom v. Goldman Sachs & Co.*, 202 F.3d 138 (2d Cir. 1999) (insurance policy correctly considered on motion to dismiss because it was incorporated by reference in the complaint), *abrogated on other grounds by Great-West Life Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (contracts at issue can be considered because they comfortably met the 12(b)(6) test as they were integral to the complaint). Thus, the Joint Insurers appropriately directed this Court to language in their Policies that disproves the City's unfounded breach of good faith allegations and

supports dismissal of Count III. The Joint Insurers' Motion does not seek a ruling from this Court on the duty to defend or number of deductibles.

### 6. The Joint Insurers' Policies Do Not Contain an Obligation to Defend or Settle Claims and Only Require Reimbursement for a Covered Claim or Loss *After* the City has Paid the Loss

In its Response to the Joint Insurers' unambiguous policy language showing that they have no duty to defend or settle the underlying lawsuits, the City makes the unsupported argument that the Joint Insurers' failure to contemporaneously "reimburse" or "advance" the City its defense costs amounts to a breach of the duty of good faith. The fatal flaw with this assertion is that the First Amended Third Party Complaints are devoid of any allegations that the City has actually incurred legal liability for its defense expenses. *A fortiori*, the City admits in its Response that the defense expenses related to the underlying *Deskovic* and *McGarr* lawsuits have been fully funded by insurers Westport and Lumbermens, and not the City. (*See* Response, at 2, fn. 2.) Thus, even if the Joint Insurers did have an obligation to "reimburse" or "advance" the City its defense expenses (which they do not), the City has still failed to identify any defense costs that would be owed.

Notwithstanding the lack of any allegations suggesting that the City funded a single dollar of defense expenses, the City dedicates two pages of its Response to mischaracterizing certain provisions in the Joint Insurers' Policies and arguing that the "advancement" of defense costs is required. Not surprisingly, the City's extended discussion of the Joint Insurers' policy language omits any reference to the "Loss Payments" provision in the Policies, which clearly shows the Joint Insurers' obligations are only to "reimburse the City for payments made" and not "advance" payments as the City contends. (*See* Joint Insurers' MOL, at 14; and Affidavits of B. Klein at ¶¶ 3-6 and D. Dolendi at ¶¶ 3-4.) In fact, at least one federal district court has already

interpreted this "Loss Payments" provision in a similar policy and found that it does not mandate the advancement of defense expenses. *See Save Mart Supermarkets v. Underwriters at Lloyd's, London*, 842 F. Supp. 597, 603 (N.D. Cal. 1994) (examining an identical "Loss Payments" provision and holding that the contemporaneous advancement of defense costs was not required). Thus, the City's argument that the Joint Insurers were obligated to "advance" its defense expenses is unavailing and should be rejected.[4]

**7. The City's Contention That it Would be "Unfair" for the Court to Require it to Satisfy the SIRs Under the Policies is Without Merit**

Each of the Joint Insurers issued excess indemnity policies to the City. A fundamental tenet of excess coverage is that the underlying insurance or Self Insured Retention ("SIR") must first be satisfied before the excess carrier is triggered for the loss. *See, e.g.*, *Royal Indem. Co. v. Wyckoff Heights Hosp.*, 953 F. Supp. 460, 466 (E.D.N.Y. 1996) (citing Ostrager & Newman's *Handbook On Insurance Coverage Disputes* for the proposition that "[a] covered loss must exceed the amount of the SIR before an excess or umbrella policy will respond to the loss"); *Pacific Employers Ins. Co. v. Domino's Pizza, Inc.*, 144 F.3d 1270, 1276–77 (9th Cir. 1998) ("It is well recognized that . . . policies which are subject to [SIRs] are excess policies which have no duty to indemnify until the [SIR] is exhausted.") Thus, the Joint Insurers' only obligation under

---

4 The City's reliance on *National Union Fire Ins. Co. of Pittsburgh v. Ambassador Group, Inc.*, 157 A.D.2d 293, 556 N.Y.S.2d 549 (N.Y. App. Div. 1990) and *Federal Ins. Co. v. Kozlowski*, 18 A.D.3d 33, 792 N.Y.S.2d 397 (N.Y. App. Div. 2005) for the assertion that the Joint Insurers are required to "advance" the City its defense costs is also without merit. Both cases involved Directors and Officers ("D & O") policies with markedly different policy language that did not include the determinative "Loss Payments" provision found in the Joint Insurers' Policies. Moreover, the City conveniently fails to mention that the *National Union* Court refused to even address the issue of the advancement of defense expenses. *See National Union*, 556 N.Y.S.2d at 553 (holding that "it [is] unnecessary for us to decide whether plaintiff is required to make interim advances of defense expenses. We note further that determination of this issue must depend upon the language of the policy....") (emphasis added). In *Kozlowski*, the policy language at issue included a provision requiring the insurer to "pay on behalf of" the insured all "Loss" that the insured became legally obligated to pay. *Kozlowski*, 792 N.Y.S.2d at 398. The Court specifically found the "pay on behalf of" language, which is entirely absent in the Joint Insurers' Policies, mandated an advancement of defense costs as they were incurred. *Id.*

the Policies would be, at best, to reimburse the City once it *already* paid a *covered* loss that exceeds the $50,000 SIR in each Policy. Even if the Court were to assume the underlying lawsuits are potentially covered by the Joint Insurers' Policies, a position the Joint Insurers steadfastly dispute, the Joint Insurers' duty to indemnify would still not be triggered because: (1) both underlying lawsuits are still pending; (2) the City has not paid any loss or defense; and (3) the First Amended Third Party Complaints are devoid of any allegations that the City has satisfied even a single SIR.

Nonetheless, in its Response, and without citation to any legal authority, the City complains that it would be "unfair" for the Court to require it to satisfy the SIR beneath each Policy. The City advances this argument despite the fact that the crux of its own position in this case is that each of the Joint Insurers' Policies are triggered by the underlying *Deskovic* and *McGarr* lawsuits and the City should be entitled to aggregate or "stack" tens of millions of insurance coverage under all the Joint Insurers' Policies collectively. Apparently, the City needs to be reminded that "fairness" is a two-way street. The City's meritless position should be rejected and the Joint Insurers' Motion to Dismiss should be granted.

## CONCLUSION

For the reasons articulated herein, as well as those presented in the Joint Insurers' Memorandum in Support of their Motion to Dismiss, the Joint Insurers respectfully request that this Court enter an Order dismissing Count III of the City's First Amended Third Party Complaints and the related "Bad Faith" factual allegations with prejudice, and for such further relief as the Court deems just and appropriate.

Dated: May 14, 2012

Respectfully submitted:

By: [signature]
Matthew B. Anderson (MA9145)
**MENDES & MOUNT, LLP**
750 Seventh Avenue
New York, NY 10019
(212) 261-8000/Telephone
(212) 261-8750/Facsimile

and

By: /s/ Patrick T. Walsh
Patrick T. Walsh (admitted *pro hac vice*)
Bradley Klein (admitted *pro hac vice*)
**HINKHOUSE WILLIAMS WALSH LLP**
180 North Stetson, Suite 3400
Chicago, IL 60601
(312) 784-5412/Telephone
(312) 784-5492/Facsimile
*Attorneys for London Insurers*

By: /s/ Jessika J. Moon
Jessika J. Moon
Catalina J. Sugayan (admitted *pro hac vice*)
David M. Dolendi (admitted *pro hac vice*)
**SEDGWICK LLP**
One North Wacker Dr., Suite 4200
Chicago, IL 60606
(312) 641-9050/Telephone
(312) 941-9530/Facsimile
*Attorneys for United National Insurance Company*

By: /s/ Marianne May

Marianne May
**CLYDE & CO LLP**
200 Campus Dr., Suite 300
Florham Park, New Jersey
(973) 210-6715/Telephone
(973) 210-6701/Facsimile
*Attorneys for Illinois Union Insurance Company*

By: /s/ Thomas A. Martin

Thomas A. Martin
**PUTNEY, TWOMBLY, HALL & HIRSON LLP**
521 Fifth Avenue
New York, NY 10175
(212) 682-0200/Telephone
(212) 682-9380/Facsimile
*Attorneys for Travelers Indemnity Company*