UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LINDA MCGARR,<br><br>               Plaintiff,<br><br>  -against-<br><br>CITY OF PEEKSKILL, WESTCHESTER COUNTY, DAVID LEVINE, THOMAS MCINTYRE, WALTER BROVARSKI, EUGENE TUMOLO, JOHN AND JANE DOE SUPERVISORS, DANIEL STEPHENS, GEORGE BOLEN, LOUIS ROH, and MILLARD HYLAND,<br><br>               Defendants. | 07 CV 9488 (KMK)(GAY) |

**PLAINTIFF LINDA MCGARR'S MEMORANDUM OF LAW OPPOSING SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY FOR DEFENDANT STEPHENS**

Emery Celli Brinckerhoff & Abady LLP
75 Rockefeller Plaza, 20th Floor
New York, New York 10019
(212) 763-5000

TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES ................................................................................................ii-iv

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

    I.    THE UNLAWFULNESS OF COERCING CONFESSIONS AND FABRICATING EVIDENCE WAS CLEARLY ESTABLISHED BEFORE 1990 ................................................................................................. 3

    II.    THE UNLAWFULNESS OF INTERFERENCE WITH FAMILY ASSOCIATION WAS WELL ESTABLISHED LONG BEFORE 1990 ................................................................................................. 5

        A.    Stephens Cannot Subvert the Clear Holding in *Patel* by Claiming that Irrelevant Ambiguities Undermine this Clearly Established Law ............................................................................... 7

    III.    NO REASONABLE OFFICE WOULD BELIEVE THAT DEFENDANT STEPHENS'S CONDUCT WAS CONSTITUTION ........................................... 9

        A.    Patel Held that there are Limits on Officers Investigating a Murder; Coercing Confessions and Fabricating Evidence are Well-Established Limits ............................................................................................................... 9

        B.    Stephens's Conduct Was Objectively Legally Unreasonable .................. 10

CONCLUSION.................................................................................................................... 12

## TABLE OF AUTHORITIES

PAGE NO(s):

**FEDERAL CASES**

*Amore v. Novarro*,
  624 F.3d 522 (2d Cir. 2010) ................................................................................. 2, 3

*Anderson v. Creighton*,
  483 U.S. 635 (1987) ................................................................................................ 4

*Butera v. District of Columbia*,
  235 F.3d 637 (D.C. Cir. 2001) ............................................................................. 6, 7

*Cornejo v. Bell*,
  592 F.3d 121 (2d Cir. 2010) ................................................................................. 2, 3

*Duchesne v. Sugarman*,
  566 F.2d 817 (2d Cir. 1977) ..................................................................................... 6

*Farmer v. Brennan*,
  511 U.S. 825 (1994) ......................................................................................... 10, 11

*Fodelmesi v. Schepperly*,
  87 CIV. 6762 (KMW), 1991 WL 120311 (S.D.N.Y. June 25, 1991) ..................... 7

*Ginsberg v. New York*,
  390 U.S. 629 (1968) ................................................................................................. 6

*Greene v. City of New York*,
  675 F. Supp. 110 (S.D.N.Y. 1987) ...................................................................... 6, 7

*Hanrahan v. Doling*,
  331 F.3d 93 (2d Cir. 2003) .................................................................................. 2, 4

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) ............................................................................................... 11

*Hope v. Pelzer*,
  536 U.S. 730 (2002) ................................................................................................. 8

*Jackler v. Byrne*,
  658 F.3d 225 (2d Cir. 2011) ..................................................................................... 2

*Joyner by Lowry v. Dumpson*,
  712 F.2d 770 (2d Cir. 1983) ..................................................................................... 6

*Kerman v. City of New York*,
  374 F.3d 93 (2d Cir. 2004) ......................................................................................... 2, 11

*Malley v. Briggs*,
  475 U.S. 335 (1986) .................................................................................................. 4, 10

*Moore v. Vega*,
  371 F.3d 110 (2d Cir. 2004) ........................................................................................ 7, 8

*Ortiz v. Jordan*,
  131 S. Ct. 884 (2011) ..................................................................................................... 11

*Patel v. Searles*,
  305 F.3d 130 (2d Cir. 2002) ................................................................................... *passim*

*Poe v. Leonard*,
  282 F.3d 123 (2d Cir. 2002) ............................................................................................. 8

*Prince v. Massachusetts*,
  321 U.S. 158 (1944) ......................................................................................................... 6

*Rivera v. Marcus*,
  696 F.2d 1016 (2d Cir. 1982) ........................................................................................... 6

*Roberts v. U.S. Jaycees*,
  468 U.S. 609 (1984) ......................................................................................................... 5

*Russo v. City of Bridgeport*,
  479 F.3d 196 (2d Cir. 2007) ......................................................................................... 3, 9

*Scott v. Harris*,
  550 U.S. 372 (2007) ....................................................................................................... 11

*Southerland v. City of New York*,
  680 F.3d 127 (2d Cir. 2012) ................................................................................... 3, 4, 9

*Stanley v. Illinois*,
  405 U.S. 645 (1972) ......................................................................................................... 6

*Tellier v. Fields*,
  280 F.3d 69 (2d Cir. 2000) ............................................................................................... 8

*United States v. Lanier*,
  520 U.S. 259 (1997) ......................................................................................................... 8

*Varrone v. Bilotti*,
  123 F.3d 75 (2d Cir.1997) .............................................................................................. 11

*Wyatt v. Cole*,
 504 U.S. 158 (1992)................................................................................................................ 4

Plaintiff Linda McGarr submits this memorandum of law in response to this Court's July 25, 2012 order asking the parties to brief the question of whether Defendant Stephens is entitled to summary judgment on the basis of qualified immunity for Ms. McGarr's family association claim.   He is not.

## INTRODUCTION

A grant of qualified immunity to Defendant Stephens for the claims against him arising out of his manufacturing evidence and coercing a confession would be a gross departure from controlling Second Circuit precedent.  As a general matter, it is obvious that a reasonable police officer in 1990 would have known that manufacturing evidence and coercing a confession was unlawful and, on that basis alone, Stephens should not be granted qualified immunity.  Even if the Court were to consider the narrower question of whether it was clearly established that Stephens's conduct violated Ms. McGarr's right to care for her minor son, that question is likewise resolved against Stephens under binding case law.  In *Patel v. Searles*, 305 F.3d 130, 135 (2d Cir. 2002)*,* the Second Circuit considered, and rejected, police officers' claims that they were immunized for their alleged interference with the parent-child relationship.  Qualified immunity did not attain, the Circuit held, because the right to family association had been clearly established since 1984, at the latest.  Since Defendant Stephens's misconduct in coercing Jeff Deskovic's confession and fabricating inculpatory evidence occurred in 1990, *after* the law was clearly established, qualified immunity is inapplicable.

At its core, any claim of qualified immunity by Defendant Stephens subverts the applicable legal regime.  Qualified immunity is intended to ensure that officers can perform their duties without undue deterrence by fears of lawsuits; it does not apply where officers know, or should know, that their conduct is illegal.  When Stephens coerced the confession of a Jeff Deskovic, a tenth grade boy, and fabricated evidence leading to his confession, Stephens knew or

1

should have known that his actions would cause Jeff's wrongful arrest, tearing apart the custodial relationship with his mother, Linda McGarr.  His conduct was objectively unreasonable in 1990, and it is objectively unreasonable today.  Such clearly unconstitutional conduct is never immune from suit.

**ARGUMENT**

In analyzing qualified immunity on a motion for summary judgment, a court must "review the facts in the light most favorable to the plaintiff and draw all permissible inferences in the plaintiff's favor."  *Hanrahan v. Doling*, 331 F.3d 93, 97 (2d Cir. 2003).

Government officials sued in their individual capacity are entitled to qualified immunity upon showing "either (1) their conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively reasonable [for them] to believe that their acts did not violate these clearly established rights."  *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010) (quoting *Cornejo v. Bell*, 592 F.3d 121, 128 (2d Cir. 2010) (alterations in orig.)).  "[I]f the law was sufficiently clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct."  *Jackler v. Byrne*, 658 F.3d 225, 243 (2d Cir. 2011) (internal quotation marks omitted).  "Although a conclusion that the defendant official's conduct was objectively reasonable as a matter of law may be appropriate where there is no dispute as to the material historical facts, if there is such a dispute, the factual questions must be resolved by the factfinder."  *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004) (internal citations omitted).

Plaintiff's opposition brief (Dkt. 227) extensively details how Defendant Stephens violated Ms. McGarr's constitutional rights by coercing the confession of her 16-year-old son and fabricating evidence.  Accordingly, this brief focuses on whether it was clearly established

2

that Stephens's conduct was unlawful, and whether it was objectively reasonable for Stephens to have thought otherwise.

### I. THE UNLAWFULNESS OF COERCING CONFESSIONS AND FABRICATING EVIDENCE WAS CLEARLY ESTABLISHED WELL BEFORE 1990

There can be no serious question that by 1990 it was clearly established that Defendant Stephens's conduct, in conspiring to coerce Jeff's confession and fabricating inculpatory evidence, was unlawful.  Indeed, Stephens effectively conceded that these were clearly established constitutional violations well before 1990.  (Dkt. 226 at 19-24).  While Stephens audaciously claimed in his summary judgment brief that he was entitled to qualified immunity notwithstanding this clearly-established law, his claim was thoroughly rebutted by Jeff Deskovic's opposition brief (Dkt. 432 in 07-cv-08150 at pp 23-25), which is incorporated by reference herein.

The Second Circuit has repeatedly stated that the qualified immunity inquiry must consider whether defendant's "conduct" or "acts" were unlawful.  *Amore*, 624 F.3d at 530; *Cornejo*, 592 F.3d at 128.  The question is not whether a reasonable officer would know *which* provision of the Constitution barred his conduct: As the Second Circuit held in *Russo v. City of Bridgeport*, 479 F.3d 196, 212 (2d Cir. 2007), the "question of reasonable disagreement turns on whether reasonable officers could disagree about *whether* conduct is illegal, not on whether they know the precise constitutional reason *why* it is not lawful."  Accordingly, *Russo* denied the police officers qualified immunity for their "refusal to investigate available exculpatory evidence" resulting in a "sustained detention," despite pre-existing ambiguity as to whether the conduct at issue would violate the Fourteenth Amendment or the Fourth Amendment.  *Id.* at 208; Similarly, in *Southerland v. City of New York*, 680 F.3d 127, 160 (2d Cir. 2012), the Court

3

denied a caseworker's qualified immunity defense in a claim by children who were allegedly wrongfully removed from their father's custody.  The Second Circuit held that the standard for a child removal claim under the Fourth Amendment was "was not established" at the time of underlying removal and "remains unsettled to this day," in part due to a subsequent case that altered the legal rubric.[1]  *Southerland* rejected the District Court's holding granting qualified immunity as "there was no clear application of Fourth Amendment standards in the child removal context" and instead held:

> What matters is whether an objectively reasonable caseworker . . . would have known that removing a child from his or her home without parental consent, circumstances warranting the removal, or court order would violate a constitutional right—not whether the caseworker would have known which constitutional provisions would be violated if the caseworker proceeded to act in a particular way.

*Id.* at 160.  Similarly, it matters not whether Stephens knew "which constitutional provisions would be violated," it is sufficient that an objectively reasonable officer would know that fabricating evidence and coercing a confession "would violate a constitutional right."  *Id.*

This anlaysis reflects the important policy interests underlying qualified immunity.  "The primary goal of qualified immunity is to permit government officials to act in areas of legal uncertainty without undue fear of subsequent liability," *Hanrahan v. Doling*, 331 F.3d 93, 98 (2d Cir. 2003), to ensure that officers will not be "unduly inhibit[ed] . . . in the discharge of their duties, *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  Qualified immunity does not act as a shield for individuals who "knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986).

---

[1] *Southerland* held that the Fourth Amendment applied to the children's claim not to be wrongfully removed, while the Fourteenth Amendment's procedural and substantive due process clauses applied to the father's claim.  *Id.* at 142-43.

4

Granting qualified immunity to Defendant Stephens would subvert these goals entirely—the purpose of the civil rights laws is to deter want police officers from coercing the confession of a teenage boy and fabricating evidence that would send him to jail for decades.  Cf. *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.").

## II. THE UNLAWFULNESS OF INTERFERENCE WITH FAMILY ASSOCIATION WAS WELL ESTABLISHED BEFORE 1990

Even if it were appropriate to consider whether it was clearly established that Stephens's actions were unlawful specifically because they violated Ms. McGarr's rights, that question was answered in the affirmative by the Second Circuit in *Patel v. Searles*, 305 F.3d 130, 135 (2d Cir. 2002). *Patel* denied qualified immunity to police officers for a substantive due process claim brought by an adult son alleging his family association rights with his father and siblings were harmed by the officers' wrongful acts in investigating a murder investigation. *Patel* held that the "right to intimate association has been clearly established since 1984 when *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984)] was decided."  *Id.* at 139.

The Second Circuit in *Patel* recognized that "the clearest instance of the right to familial association is embodied in the decades worth of authority protecting parents' custodial rights," to raise their children such as the right Ms. McGarr asserts here; *Patel*, in contrast, denied qualified immunity for the comparatively weaker constitutional claim of interference with the relationship between a parent and an adult child who was not in his parents' custody.  *Id.* at 139.  Indeed, while *Patel* explained that *Roberts* held that "constitutional protection extended to the most intimate relationships," *id.* at 139, there is extensive Supreme Court precedent pre-dating *Roberts* protecting custodial parent-child relationships from state interference.  The

5

Supreme Court has long focused on "securing the rights of parents to have custody of and to raise their minor children in a manner that develops parental and filial bonds free from government interference." *Butera v. District of Columbia,* 235 F.3d 637, 655 (D.C. Cir. 2001) (citing *Prince v. Massachusetts,* 321 U.S. 158 (1944); *Ginsberg v. New York,* 390 U.S. 629 (1968); *Stanley v. Illinois,* 405 U.S. 645 (1972)).

Second Circuit cases prior to 1990 also clearly established a parent's substantive due process right to family integrity. *See, e.g.*, *Joyner by Lowry v. Dumpson*, 712 F.2d 770, 777-78, 782-83 (2d Cir. 1983) (remanding for trial on whether defendants' temporary foster care system violated "fundamental" right to "family integrity" by refusing to return children to parents' custody and restricting visitation); *Rivera v. Marcus*, 696 F.2d 1016, 1024-25 (2d Cir. 1982) ("we find that Mrs. Rivera possesses an important liberty interest in preserving the integrity and stability of her family")*, cited by, Patel,* 305 F.3d at 139; *Duchesne v. Sugarman*, 566 F.2d 817, 825 (2d Cir. 1977) (" the most essential and basic aspect of familial privacy the right of the family to remain together without the coercive interference of the awesome power of the state.").[2]

Not surprisingly, then, courts in the Second Circuit, as well as other Courts of Appeals, had repeatedly upheld claims by parents alleging that the police interfered with their relationship with their children for conduct that predated Defendant Stephens's conduct here. *See Greene v. City of New York,* 675 F. Supp. 110, 113–14 (S.D.N.Y. 1987) (upholding jury verdict for minor children for their claim that police officers violated their right to parenthood by

---

[2] Indeed, the right to family association predates even these Supreme Court and Second Circuit cases and originates in the enactment of § 1983. As the court in *Greene v. City of New York*, 675 F. Supp. 110, 114 (S.D.N.Y. 1987), noted, "the legislative history of the Ku Klux Klan Act of 1871, the precursor of § 1983," evidences Congress's intention to offer a remedy "to the children whose father has been killed."

6

using excessive force and killing their father) and Court of Appeals cases cited therein[3]; *Fodelmesi v. Schepperly*, 87 CIV. 6762 (KMW), 1991 WL 120311 (S.D.N.Y. June 25, 1991) ("this court has upheld § 1983 actions by parents for deprivation of parenthood and familial association" and upholding claim by parents for actions police officers took between 1984 and 1987 against their adult son).

### A. Stephens Cannot Subvert the Clear Holding in *Patel* by Claiming that Irrelevant Ambiguities Undermine this Clearly Established Law

To the extent there is any ambiguity in the law in this area, Defendant Stephens may claim that there is no clearly established claim for state interference with the relationship between a parent and an *adult* child who is not in the parent's custody. *See e.g., Butera v. District of Columbia,* 235 F.3d 637, 647, 682 (D.C. Cir. 2001) (stating that the Supreme Court has "not spoken" to the question of whether there is a constitutional right to the "companionship of [an] independent adult child"); *but cf. Patel*, 305 F.3d at 138-40 (denying officers qualified immunity for claim of interference with relationship between parent and adult child). That potential ambiguity however, is of no moment here, as Jeff Deskovic was 16 years old, a sophomore in high school, who was living with his mother at the time that Stephens coerced his confession and fabricated inculpatory evidence. The law has long been clearly established that a mother whose custodial relationship with her minor child was wrongfully interfered with by state actors can bring a section 1983 claim.

Similarly inapposite is any claim that the law was not clearly established because the controlling precedent at the time was not in the context of police officers' misconduct (though

---

[3] *Greene* cited cases from the Seventh, Ninth, Tenth, Third, Eight, and Fifth Circuit for the proposition "those circuits which have considered the question have concluded that there is a § 1983 claim for deprivation of the parent-child relationship in the wrongful death context." *Id.* at 114 (also noting the First Circuit's narrow holding to the contrary).

ample precedent from other Circuits and District Courts within this Circuit so held).  That argument is foreclosed by *Patel*'s qualified immunity analysis which relied on *Roberts* to deny police officers qualified immunity.  Moreover "the absence of a decision by [the Second Circuit] or the Supreme Court directly addressing the right at issue will not preclude a finding that the law was clearly established, at the time of the alleged violation." *Tellier v. Fields*, 280 F.3d 69, 84 (2d Cir. 2000) (internal citations omitted); *see also United States v. Lanier*, 520 U.S. 259, 271 (1997) ("[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful.' ").  Decades of Supreme Court caselaw "defined the contours of the right with reasonable specificity," here a parent's right to be free from state interference with her custodial relationship with her minor child, thereby "clearly foreshadow[ing]" a particular ruling on the issue." *Id.*

  Nor can Stephens seek refuge by claiming that there was uncertainty as to whether plaintiff's claim required, as one of its elements, a showing that Stephens directed his conduct at the familial relationship.  First, as detailed above, *Patel* made clear that "this Circuit has never held that a challenged action must be directed at a protected relationship for it to infringe on the right to intimate association." *Id.* at 137.  *Patel* also indicated that there was no basis to believe there was any such requirement in *Roberts*.  *Id.* at 137.  To the extent Stephens seeks to rely on (largely distinguishable and post-dating 1990) caselaw from another Circuit or from district courts within this Circuit, such caselaw is irrelevant—the inquiry must focus on "Supreme Court and Second Circuit precedent existing at the time of the alleged violation." *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004).

  Second, any argument that each particular element of the claim must be clearly established is the type of rigid analysis rejected by the Supreme Court and the Second Circuit.  In *Hope v. Pelzer*, 536 U.S. 730, 739, 741 (2002), the Supreme Court made clear that defendants

8

need only have "fair notice" that their conduct is unlawful, and "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Indeed, the Second Circuit has warned that "[c]haracterizing the right too narrowly to the facts of the case might permit government actors to escape personal liability." *Poe v. Leonard*, 282 F.3d 123, 135 (2d Cir. 2002) (internal citation omitted)**.** And, as detailed above, in *Southerland* the Second Circuit refused to grant qualified immunity though the "standard used to determine liability" was unclear. *Southerland*, 680 F.3d at 161; *see also Russo*, 479 F.3d at 212.

### III. NO REASONABLE OFFICER WOULD BELIEVE THAT DEFENDANT STEPHENS'S CONDUCT WAS CONSTITUTIONAL

Nor can Stephens claim that his actions were objectively legally reasonable.

#### A. Patel Held that there are Limits on Officers Investigating a Murder; Coercing Confessions and Fabricating Evidence are Well-Established Limits

Here too *Patel* is an instructive starting point, though Stephens's claim to qualified immunity is categorically *weaker* than the claim of the defendant officers in *Patel*. *Patel* denied the officers qualified immunity because the "uncertainty as to the contours of the right [to family association] . . . does not extend so far as to suggest that a murder investigation erodes all of the 'critical buffers between the individual and the power of the State.'" *Id.* at 139 (quoting *Roberts*, 468 U.S. at 619). Indeed, the Second Circuit in *Patel* held that there are certain "clearly established limits" to an office's action in investigating a murder; *Patel* refused to hold that the "right to intimate association does not impose any clearly established limits on the tactics that a police officer may use in the course of an investigation." *Id.* To do so, *Patel* held, "would render hollow the right to intimate association." *Id.* at 140.

9

Like the murder investigation in *Patel,* the murder investigation of A.C. in this case placed limits on police tactics. But unlike in *Patel* where the limits the court needed to determine were the *sui generis* limits on police officers' right to "engage in an extended public and private defamatory misinformation campaign," the "clearly established limits" here are the familiar ones: the constitutional limits on coercive interrogations and fabricating evidence. Put another way, the officer defendants in *Patel* were facing liability for a "misinformation campaign," which was only actionable to the extent the officer violated Patel's right to intimate association. In marked contrast, Defendant Stephens's misconduct is independently actionable as a violation of Jeff Deskovic's constitutional rights. As detailed in Part I, *supra,* qualified immunity does not act as a shield for individuals who "knowingly violate the law." *Malley,* 475 U.S. at 341.

### B.    Stephens's Conduct Was Objectively Legally Unreasonable

Qualified immunity is particularly inappropriate here because, though Plaintiff need not prove that Defendant Stephens directed his conduct at the familial relationship, there is ample evidence for a jury to so find.

As Defendant Stephens admits, plaintiff has stated a claim if a reasonable jury could find that Stephens acted with "deliberate indifference to familial association rights." Stephens Reply Br., Dkt. 231, at 11. Deliberate indifference is a lower standard than intending or knowing that harm will occur. *Farmer v. Brennan*, 511 U.S. 825, 835, 842 (1994) (defining deliberate indifference as "*less than* acts or omissions for the very *purpose* of causing harm or with *knowledge* that harm will result"). Instead it is tantamount to recklessness, i.e. "knowledge of a substantial risk of serious harm." *Id.* at 842.

Ms. McGarr's summary judgment opposition brief detailed extensive evidence that Defendant Stephens, in conspiracy with the Peekskill officers, was deliberately indifferent to

10

family association rights given the following facts, among others: (1) he interrogated Jeff on a school day, far from home, to ensure that Ms. McGarr would be unaware and unable to intercede on Jeff's behalf; (2) he knew that Jeff was a 16-year-old tenth grade boy who lived with his mother; (3) he did not intercede when the police said they would not let Jeff go home until he confessed; (4) he knew Jeff's concerns that a confession would interfere with his relationship with his mother and participated in the conspiracy to coerce the confession nonetheless; and (6) he refused to permit Jeff to return home until he repeated his confession, even if it took "all night." *See* Pl. Br. at 14-16 (Dkt. 227).  Stephens contests many of these facts but on summary judgment, even in the qualified immunity context, the Court must ""adopt[] . . . the plaintiff's version of the facts." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

This evidence goes beyond deliberate indifference; it establishes intentional interference.  But, at a minimum, crediting these facts as true (as this Court must), any reasonable officer in Stephens's position would have known that there was a substantial risk that Stephens's conduct would cause Jeff's arrest and conviction, separating him from his custodial parent.  *Farmer*, 511 at 835.

Given the numerous "dispute[s] as to the material historical facts," summary judgment on qualified immunity is inappropriate in this case and "the factual questions must be resolved by the factfinder." *Kerman*, 374 F.3d at 109 (internal citations omitted); *see also Ortiz v. Jordan*, 131 S. Ct. 884, 892 (2011) (qualified immunity is typically a "purely legal" issue only in "contests not about what occurred, or why an action was taken or omitted, but disputes about the substance and clarity of pre-existing law").

***

Because qualified immunity is an affirmative defense, "the defendants bear the burden of showing that the challenged act was objectively reasonable in light of the law existing at that time." *Varrone v. Bilotti,* 123 F.3d 75, 78 (2d Cir.1997) (citing *Harlow,* 457 U.S. at 815, 102 S.Ct. 2727). Defendant Stephens cannot remotely meet his burden.

## CONCLUSION

For the foregoing reasons and the reasons detailed in Plaintiff McGarr's original opposition brief, this Court should deny Defendant Stephens's motion for summary judgment as to Ms. McGarr and find that Defendant Stephens is not entitled to summary judgment on the question of qualified immunity.

Date: July 30, 2012  
  New York, NY

Respectfully Submitted,

　　　　/s/　　　　　　　　　  
Diane L. Houk  
Debra L. Greenberger  
Emery Celli Brinckerhoff & Abady LLP  
75 Rockefeller Plaza, 20th Floor  
New York, NY 10019  
Telephone (212) 763-5000  
Fax (212) 763-5001

*Counsel for Plaintiff Linda McGarr*